UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM L. LILE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-00553-JRS-CSW |
| ) | |
| CENTURION HEALTH OF INDIANA, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

In this civil rights action, plaintiff William Lile, Jr., alleges that defendants Dr. Millikan and Centurion Health of Indiana, LLC ("Centurion") were deliberately indifferent to his medical needs by providing ineffective treatment for Mr. Lile's ongoing pain and hernia, and denial of certain medication due to a Centurion policy. *See* dkts. 1; 14.

Before the Court is Mr. Lile's motion "for Emergency Summary Judgment," which the Court construes as a motion for preliminary injunction, in which he requests that the Court order the defendants to provide him with the medication Baclofen and surgical repair of his hernia. For the following reasons, Mr. Lile's motion, dkt. [11], is **denied**.

**I. Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the

1

preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

Moreover, as an incarcerated person with concerns regarding prison conditions, Mr. Lile may only seek injunctive relief as allowed by the Prison Litigation Reform Act. Under the PLRA, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## II. Facts

Mr. Lile has been incarcerated at New Castle Correctional Facility ("New Castle") since December 2023. *See generally*, dkt. 34-1. Mr. Lile was housed at Wabash Valley Correctional Facility ("Wabash Valley") before he was transferred to New Castle. *Id*. at 3.

Mr. Lile experienced three strokes prior to being transferred to New Castle, which strokes resulted in mobility issues, left-sided paralysis, and body spasms. *Id*. at 5-7. He was prescribed Zanaflex and Baclofen to treat his post-stroke symptoms while he was incarcerated at Wabash Valley. *Id*. at 3-4. At New Castle, Mr. Lile ran out of Baclofen and requested more, which was denied while medical staff prescribed multiple alternative medications. Dkt. 34-1 at 19-21, 41-43. 49; dkt. 34-2 at 2-4. Medical staff determined that the conservative measures and alternative medications were ineffective to manage Mr. Lile's muscle spasms and approved the Baclofen prescription on August 12, 2025. Dkt. 34-1 at 50; dkt. 34-2 at 4, 6-8. Mr. Lile began receiving Baclofen on August 13, 2025, and continues to receive it. Dk. 34-1 at 50; dkt. 34-2 at 4, 6-8. Accordingly, any request for injunctive relief related to Baclofen is **denied as moot**.

Mr. Lile had a history of inguinal hernia before he was transferred to New Castle. *See generally*, dkt. 34-1. On July 24, 2024, Mr. Lile had a nurse visit with a non-party nurse and

reported that his inguinal hernia, which had been a small knot, had grown to the size of a fist. *Id*. at 21. Mr. Lile stated that the hernia did not hurt all the time, but it hurt with greater intensity when he coughed or with activity. *Id*. Mr. Lile was referred for an x-ray and lab tests. *Id*.

On July 31, a non-party physician evaluated Mr. Lile for the hernia and noted that the hernia had become more bothersome but not painful and that there were no signs of incarceration or strangulation. The physician prescribed a hernia belt and ordered an ultrasound. *Id*. at 22-24. The ultrasound, preformed on August 2, revealed a small right inguinal herniation without acute complication. *Id*. at 44.

On October 10, Mr. Lile submitted a Request for Healthcare form stating he had hernia pain and was not feeling well. *Id*. at 2. The next day, a non-party nurse evaluated Mr. Lile for his complaints of increased hernia pain that radiates down into his testicle at times, and that he has been having trouble reducing the hernia. *Id*. at 25-28. The nurse placed Mr. Lile on a gurney to rest the area to try to allow the hernia to be depressed and ordered an ultrasound. *Id*. at 29. The ultrasound showed a small right inguinal bowel herniation without acute complication. *Id*. at 46. Mr. Lile was sent to St. Vincent Anderson Emergency Department for further evaluation the same day. *Id*. at 30, 45. The medical providers at the hospital confirmed that there was no evidence of bowel incarceration and instructed to continue Tylenol and Motrin as needed. *Id*. at 45. It was noted that if he continues to have pain, Mr. Lile will need follow-up with a general surgeon, and that if fever or redness develops, he should be reevaluated. *Id*.

On December 17, Dr. Millikan examined Mr. Lile for complaints that he was unable to walk due to his hernia. *Id*. at 31-34. Dr. Millikan noted that there was some confusion because Mr. Lile believed that the hospital providers had recommended surgery, but the hospital records noted that surgical follow-up should occur if he had continuing pain. *Id*. at 33. Dr. Millikan attempted to

reduce the hernia, but Mr. Lile would not allow it due to discomfort. *Id*. After this visit, Dr. Millikan submitted an Offsite Provider Request ("OPR") for a consultation for hernia surgery. *Id*. at 35.

On January 14, 2025, Dr. Stephanie Riley, Centurion's Statewide Medical Director, denied the OPR for a surgery consult. *Id*. at 47-48. She stated, "at this time, does not meet guidelines for elective surgical repair of hernia. Recommend onsite follow-up, lifting/activity restrictions. Consider resubmission for intrascrotal extension or if hernia is unable to be reduced." *Id*.

On June 4, 2025, Mr. Lile was seen by a non-party nurse practitioner for a chronic care visit and reported that his hernia was reducible when laying down and that he was taking care of the hernia himself. *Id*. at 36-40. The nurse practitioner noted that because Mr. Lile was managing the hernia well by himself, no interventions were required at that time, and he could follow up as needed. *Id*. at 36-40.

### III. Analysis

Mr. Lile contends that he is entitled to a preliminary injunction ordering the defendants to prescribe him the medication Baclofen and provide surgical repair of his hernia. Dkt. 11. However, for the reasons explained below, Mr. Lile has not established the threshold requirements necessary for preliminary injunctive relief. Mr. Lile's motion for preliminary injunction lacks any factual basis or evidence to support his argument.

#### A. Likelihood of Success on the Merits

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). "A 'strong' showing ... does not mean proof by a preponderance .... But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

4

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

A prisoner may show deliberate indifference by establishing that his medical providers have chosen "an 'easier and less efficacious treatment' without exercising professional judgment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)). However, prisoners cannot dictate their care, *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017), and disagreements between a prisoner and his medical provider, or even amongst medical providers, alone does not establish an Eighth Amendment violation, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a course of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016).

Mr. Lile has not demonstrated a strong likelihood of showing that either Dr. Millikan or Centurion was deliberately indifferent to Mr. Lile's request for a surgical repair of his hernia. The record reveals that when Dr. Millikan examined Mr. Lile in December 2024 due to complaints of increased pain, he examined Mr. Lile's prior medical records from the hospital and saw that he had not been previously recommended to undergo surgery, but to follow up with an additional consultation if pain increased. In response, Dr. Millikan submitted an OPR for Mr. Lile to obtain a surgery consultation. Dr. Millikan also attempted to provide treatment to reduce the hernia, but Mr. Lile refused due to his discomfort but reported that it does reduce sometimes when laying down and relaxing. The provided medical records, complaint, and motion do not include any other

evidence or allegation that Dr. Millikan met with Mr. Lile on any other occasion or was otherwise involved in the decision to provide hernia surgery.

After Dr. Millikan submitted the OPR, Centurion's medical director denied the surgery consult on the grounds that Mr. Lile's hernia did not meet the guidelines for elective surgical repair, but recommended follow up and that resubmission should be considered if the hernia is unable to be reduced or if Mr. Lile suffers from intrascrotal extension. Although Centurion's medical director did deny the surgery consultation, there is no evidence that that decision was not made based on professional medical judgment. There is no evidence in the record that Mr. Lile continued to experience hernia pain, that the hernia was unable to be reduced, or that he suffered from intrascrotal extension. Mr. Lile had a medical appointment in June 2025, and told a medical provider his hernia was reducible, and he was taking care of it on his own. Mr. Lile has not submitted any evidence or argument to the contrary.

It is true that "a district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits." *Dexia Credit Loc. v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010). Still, there must be some evidence in support before the court will consider granting the "extraordinary" remedy of a preliminary injunction. There currently is none. Thus, Mr. Lile has not shown a strong likelihood of success on the merits of any claims against Defendants at this time.

**B.      Irreparable Harm and Traditional Legal Remedies**

Though the Court has found Mr. Lile's motion fails to meet the threshold requirement of a strong likelihood of success on the merits, it briefly addresses the remaining two elements. Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th

Cir. 1997)). The plaintiff must show "that he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.* (cleaned up). "The moving party must also demonstrate that he has no adequate remedy at law should the preliminary injunction not issue." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017). "This does not require that he demonstrate that the remedy be wholly ineffectual." *Id*. (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). "Rather, he must demonstrate that any award would be seriously deficient as compared to the harm suffered." *Id*. (quoting *Foodcomm*, 328 F.3d at 304).

The Seventh Circuit has recognized that not all reducible hernias require surgery. *Heard v. Tilden*, 774 Fed. App'x. 985, 988 (7th Cir. 2019) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006)). The medical records reveal that Mr. Lile's hernia was able to be reduced, and surgery was not recommended at any point in the relevant time period. When Dr. Millikan submitted an offsite provider request for a surgical consult, it was denied by Centurion because the hernia was reducible with instructions to resubmit the request if the hernia is unable to be reduced or there is intrastromal extension. Later, Mr. Lile reported that he was taking care of the hernia himself and that it was reducible. Mr. Lile has provided no other evidence or argument to support his theory that he needs immediate hernia surgery. Mr. Lile has not met his burden to show that he is at risk of irreparable harm and that the available legal remedies to him are inadequate.

**IV. Conclusion**

"[A]n applicant for preliminary relief bears a significant burden[.]" *Ill. Republican Party*

*v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Mr. Lile has not met that burden.

Accordingly, his motion for preliminary injunction, dkt. [11], is **denied**.

**IT IS SO ORDERED.**

Date: 12/29/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

WILLIAM L. LILE, JR.
895654
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Lindsay A. Llewellyn
Riley Bennett Egloff LLP
lllewellyn@rbelaw.com